IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BLISS A. JOHNSON, individually,
BLISS B. JOHNSON, individually,
KIA JOHNSON, individually,

          Plaintiffs,

v.                          CIVIL ACTION NO.   3:21-0242

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT A. LOWTHER, individually,
KENNY DAVIS, individually,
BRIAN LOCKHART, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West Virginia,
JOHN DOE, individual,

          Defendants.

**AMENDED MEMORANDUM OPINION AND ORDER**

The Court amends its previously filed Memorandum Opinion and Order (ECF No. 46) to correctly list the named defendant officers in the factual background portion of the Order.

Pending before the Court is Defendant Putnam County Commission's Motion to Dismiss. ECF No. 11. For the reasons stated herein, the Court **DENIES** the Motion.

**I. FACTUAL BACKGROUND**

The named Defendants, Officers Brian D. Hall, Xerxes Rahmati, Scott A. Lowther, Kenny Davis, and Brian Lockhart (collectively "officers") allegedly entered the Johnson home without a warrant and began an unlawful search of the residence and seizure of items, permanently depriving Plaintiffs Bliss A. Johnson, Bliss B. Johnson, and Kia Johnson (collectively "Plaintiffs") of their

property. *See e.g.*, Compl., ECF No. 1. The Complaint alleges that defendant police officers were part of the Putnam County Sherriff's Office's Special Enforcement Unit ("SEU"). *Id.* ¶ 15. The SEU would obtain tips about individuals who may have been in possession of marijuana or may have been selling marijuana. *Id.* ¶ 17. The SEU would then make warrantless entry into the residence of the suspected individual, and, upon finding the marijuana that was the subject of the tip, threaten and pressure the suspect to give them another tip, in exchange for not being arrested or charged. *Id.* The SEU members would then leave, taking the marijuana they seized, along with any cash or firearms found during the illegal search and seizure. *Id*. Allegedly, the SEU committed similar behavior on many occasions. *Id*. The officers would not leave any "paper trail" such as police reports, warrant applications, charging documents, or search and seizure inventories. *Id.* They would take into their personal possession any seized marijuana, cash, and firearms, without properly documenting their acquisition. *Id.*

Allegedly, the officers continued this practice when they entered the Johnson home in Poca, Putnam County, West Virginia, on April 18, 2019, at 5:00 pm. *Id.* ¶ 19. The officers, none of whom wore a uniform, arrived suddenly, exited their vehicles, and approached the house. *Id*. ¶¶ 20-21. The officers entered the home, lacking a warrant, voluntary consent, or exigent circumstances, on a tip that Plaintiff Bliss B. Johnson, the son of Plaintiff Bliss A. Johnson, would have marijuana in the home. *Id.* ¶¶ 22-23. The officers let themselves in to search the house, finding a dead marijuana or hemp plant in the basement belonging to Plaintiff Bliss B. Johnson. *Id*. ¶ 24. The officers informed Plaintiff Bliss A. Johnson that they had no need for a warrant because they had probable cause from finding the marijuana plant. *Id.* ¶ 25. They forced the family to sit around the kitchen table and made other various threats. *Id*. ¶¶ 26-28. While ransacking the house, as the family sat in the kitchen, one of the officers found a safe under Plaintiff Bliss A. Johnson's

bed. *Id*. ¶ 29. Plaintiff Bliss A. Johnson was physically forced to open the safe, which contained cash savings of approximately $10,000 and several lawfully owned firearms. *Id*. The officers confiscated the cash and the firearms. *Id*. ¶ 30. The officers forced Plaintiffs, under threat of physical harm and prosecution, to sign documents declaring that they were donating the seized items to the Putnam County Sherriff and to sign consent-to-search forms. *Id*. ¶¶ 30-31. The officers also found and took $300 from Plaintiff Bliss B. Johnson's car, which they illegally searched. *Id*. ¶ 32. The SEU later forced Plaintiff Bliss B. Johnson to meet them at an abandoned building in Teays Valley, where they pressured him to sign donation forms and give them the name of someone else who may have illegal drugs. *Id*. ¶ 34.

In January 2020, a YouTube video was uploaded showing several plainclothes officers (including those named as defendants here) unlawfully entering the home of another West Virginia resident in August 2019. *Id*. ¶¶ 11, 15, 53. Because of the resulting media attention, Plaintiffs felt comfortable coming forward with their allegations against the SEU. *Id*. ¶ 35. Counsel filed a FOIA request; the response indicated that there was no documentation of employees of the Putnam County Sheriff's Department ever having been at the Johnson residence. *Id*. ¶¶ 36-38. No criminal charged resulted from the search and seizure. *Id*. ¶ 39. Plaintiffs filed this action, alleging one count of unreasonable search and seizure against the individual defendant officers, a *Monell* claim against the Putnam County Commission ("PCC"), and a count against John Doe as supervisor of the SEU. PCC has moved to dismiss the Complaint against it.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### III. ANALYSIS

As an initial matter, it is well established that a state's political subdivisions are amenable to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). Yet the fact that political subdivisions are suitable defendants does not render them vicariously liable for the actions of their employees. *Id.* at 694. Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that

proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). The Fourth Circuit Court of Appeals has clarified that:

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). The Fourth Circuit has noted that "[a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens v. Baltimore Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014). In this context, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Id.*

Defendant PCC maintains that Plaintiffs present a theory that PCC "has adopted a custom and practice of unconstitutional violations by SEU officers but fail to provide factual support for a practice so persistent and widespread as to constitute a custom of unconstitutional conduct." Def.'s Mot. in Supp. at 8, ECF No. 12. Defendant notes that Plaintiffs do not point to any instances of similar misconduct occurring prior to the April 2019 incident to indicate that PCC had any prior knowledge, as the alleged videotaped incident took place after the search of Plaintiffs' home. *Id*. at 9. But even if both incidents were considered, PCC contends that the two isolated instances would not reach the "widespread and permanent" practice necessary to establish liability. *Id*. at 9-10. Plaintiff responds that liability can stem from a single incident, because requirements of policy and custom do not necessitate proof of a long-standing practice. Pl's Resp. at 5, ECF No. 17. They contend that PCC can be liable because, in having an SEU force to engage in drug investigations through warrantless searches and seizures, "PCC authorized a police[] practice, and pattern of unconstitutional conduct in violation of the Fourth Amendment," which is further evidenced by

the videotaped incident. *Id.* at 6.

Plaintiffs' allegations plausibly state a claim for relief. In *Owens*, the Fourth Circuit allowed a claim to survive a motion to dismiss when Plaintiff alleged that "'reported and unreported cases from the period of time before and during the events complained of' establish that the BCPD [Baltimore City Police Department] had a custom, policy or practice of knowingly and repeatedly suppressing exculpatory evidence." *Id*. Further, the plaintiff alleged that "'a number of motions were filed and granted during this time period that demonstrate. . . the custom, policy, or practice. . . by condoning it and/or knowingly turning a blind eye to it.'" *Id*. The Court found that the assertions as to "reported and unreported cases" and "numerous successful motions" were factual allegations, the veracity of which could plausibly support a *Monell* claim, and which would buttress Plaintiff's legal conclusions. The *Owens* court also relied on a First Circuit decision concluding that allegations of a "'volume of cases'" involving similar constitutional violations to those alleged by the plaintiff contained sufficient factual matter to support a *Monell* claim, even if "the complaint was couched in general terms" and the "cases" comprising the "volume" were not otherwise identified. *Id*. at 403-04 (brackets omitted) (quoting *Haley v. City of Bos*., 657 F.3d 39, 53 (1st Cir. 2011)).

Plaintiffs allege that "[t]he SEU engaged in a pattern and practice of warrantless searches and seizures…." and that the SEU "ha[s] also committed other similar civil rights violations against other victims in Putnam County, including the incident captured on video… in August of 2019." Compl. ¶¶ 51, 53. This allegation, like the one in *Owens*, alleges separate instances that may buttress Plaintiffs' legal conclusion, even if they occurred after this specific incident. *See also Daniels v. City of South Charleston*, No. 2:20-cv-00779, 2021 WL 3624696, at *5 (S.D.W. Va. Aug. 16, 2021) (finding that the court was constrained by *Owens* to conclude that the plaintiff's

complaint stated sufficient factual detail to support his allegations when he claimed that unconstitutional excessive force "has been employed against multiple West Virginia citizens on multiple occasions within the past five years.") (internal citations omitted); *Lane v. Fayette Cnty. Comm'n*, No. 2:18-CV-01223, 2019 WL 4780815, at *3 (S.D.W. Va. Sept. 30, 2019) (granting a motion to dismiss where plaintiff did not allege "any instances of such misconduct other than the instant case."); *Quigley v. City of Huntington*, No. 3:17-CV-01906, 2017 WL 9533233, at *9 (S.D.W. Va. Sept. 22, 2017) (finding sufficient allegations to withstand a motion to dismiss where "[p]laintiff's identification of a municipal custom and citation to seven prior civil rights lawsuits filed against the Huntington Police Department suggested the City's knowledge and indifference.") *report and recommendation adopted sub nom by* 2017 WL 4998647 (S.D.W. Va. Nov. 2, 2017).

The Complaint's other allegations include that PCC purposely established and operated the the SEU and knew of and condoned the SEU officers repeated constitutional violations. *Id*. ¶ 51. This alleges that the PCC was the "moving force" behind the constitutional violations where it deliberately created a unit of officers who did not comply with procedural safeguards and engaged in constitutional violations. *See Bd. of Ctny. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (quoting *Monell*, 436 U.S. at 694).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: December 10, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE